IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOSEAN TARTILLAS JONES,        )
                               )
        Petitioner,            )
                               )  CIVIL ACTION NO. 09-00059-WS
vs.                            )  CRIMINAL NO. 06-00074-WS
                               )
UNITED STATES OF AMERICA,      )
                               )
        Respondent.            )


REPORT AND RECOMMENDATION


This action is before the Court on Petitioner Josean
Tartillas Jones' Motion to Vacate Set Aside, or Correct Sentence
pursuant to 28 U.S.C. § 2255 (Docs. 77, 86), and the Government's
response. (Doc. 94). Following the referral of this action to
the undersigned Magistrate Judge pursuant to 28 U.S.C. §
636(b)(1)(B) and Rule 8 of the Rules Governing Section 2255
Cases, an evidentiary hearing was conducted on May 26, 2010.
For the reasons set forth below, it is recommended that Jones' §
2255 motion be denied.

I.  BACKGROUND

On April 27, 2006, the grand jury issued an indictment
charging Jones, and others, with conspiracy to possess with
intent to distribute in excess of 50 grams of crack cocaine in
violation of 21 U.S.C. § 846 (count 1) and four counts of

possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (counts 2, 4, 7 and 9). (Doc. 1, Indictment). Lila Cleveland was appointed to represent Jones on July 20, 2006.[1] (Doc. 14)

Jones, through his counsel, notified the Court of his intent to plead guilty to count one of the indictment during a pretrial conference conducted on August 7, 2006. (Doc. 17). On August 11, 2006, the parties filed a Plea Agreement, along with a factual resume, with the Court. (Doc. 18, Plea Agreement). The Plea Agreement was signed by Jones, his counsel, and the Assistant U.S. Attorney. (Id.) In the Plea Agreement, Jones waived his right to collaterally attack his sentence except in limited circumstances. Specifically, Jones waived his right to appeal or collaterally attack his sentence except if the sentence imposed punishment in excess of the statutory maximum, if the sentence constituted an upward departure of the guideline range, or if a claim of ineffective assistance of counsel were asserted. (Doc. 18 at 10).

At the guilty plea hearing held before Chief District Judge William Steele on August 14, 2006, Jones was placed under oath,

---

[1] Fred Tiemann with the Federal Defender's Office was originally appointed to represent Jones. Tiemann was later permitted to withdraw. (Docs. 10, 15).

and answered affirmatively when asked whether he had read the Plea Agreement, discussed it with his counsel, understood its contents and agreed with its terms, conditions and information. (Doc. 90 at 9, Guilty Plea Hearing Transcript). Jones pled guilty to count one[2] of the Indictment, conspiracy to possess with intent to distribute in excess of 50 grams of crack cocaine in violation of 21 U.S.C. § 846, and in doing so, acknowledged to the court that he was pleading guilty of his own free will because he was, in fact, guilty. (Id. at 20). Jones' plea was accepted by the Court, and his sentencing was scheduled for November 20, 2006. (Id. at 20, 24-24).

After several continuances at the request of defense counsel and the Government, Jones appeared with counsel for sentencing before Chief Judge Steele on June 3, 2008. The Court sentenced Jones to a 235-month term of imprisonment. The Court also imposed 5 years of supervised release and a special assessment of $100. (Doc. 90-1, Sentencing Hearing Transcript). The Court, on June 27, 2008, entered the Judgment and Commitment Order. (Doc. 69).

Jones did not file a direct appeal in this case; however, on February 5, 2009, he filed a petition collaterally attacking his

---

[2] Counts 2, 4, 7 and 9 were dismissed on the government's motion. (Doc. 69).

conviction and sentence pursuant to 28 U.S..C. § 2255. Jones raised the following claims: (1) his counsel, Lila Cleveland, was ineffective for failing to file a direct appeal as requested; (2) counsel was ineffective for failing to request downward departure due to Jones' diminished capacity; (3) counsel was ineffective for misadvising Jones that he was pleading guilty to his individual distribution charges and not to conspiracy; and (4) Jones' guilty plea was not knowingly and voluntarily made due to "counsel's misadvice." (Doc. 77 at 20-1). The Government filed a response opposing Jones' petition. (Doc. 94). In its response, the Government acknowledged that an evidentiary hearing would be needed to resolve Jones' first claim because Cleveland submitted an affidavit contradicting Jones' assertion that he directed her to file an appeal on his behalf. (Doc. 94 at 8-9). The Government also argued that Plaintiff's remaining claims are without merit and should be denied.

## II. **Habeas Standard**

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165 (1982). A Petitioner who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral

4

attack has remained extremely limited. <u>Addonizio v. United States</u>, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." <u>Moore v. United States</u>, 598 F.2d 439, 441 (5th Cir. 1979).[3]

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "non constitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." <u>Burke v. United States</u>, 152 F.3d 1329, 1331 (11th Cir. 1998)(citations and internal quotations omitted). A petitioner's burden with regard

---

[3] In <u>Bonner v. City of Pritchard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990). A meritorious claim of ineffective assistance of counsel can constitute cause. U.S. v. Nyhuis, 211 F. 3d 1340, 1344 (11th cir. 2000).

III.  **ANALYSIS**

   **A. Claim One: Failure to File Notice of Appeal as Directed.**

   As indicated above, Jones contends that his former counsel, Lila Cleveland, was ineffective for failing to honor his request to file a direct appeal. (Doc. 77 at 21). In his initial petition, Jones alleges that immediately after sentencing, he requested that Cleveland file an appeal, and that when he returned back to the "holding facility", he wrote Cleveland a letter and requested that she file a Notice of Appeal. (Doc. 77). Jones later submitted a "Legal Declaration" signed by his mother, Evelyn Jones and dated April 6, 2009. (Doc. 86 at 8-9). In the Declaration, Evelyn Jones asserts that she is the mother of Josean Jones, that following his sentencing on June 6, 2008, he contacted her and advised that he was having trouble getting in touch with his attorney, that the attorney was not accepting

his "pre-paid phone calls," and that he had a "strict ten day" deadline in which to file a direct appeal. According to Evelyn Jones, Petitioner requested that she call his attorney and leave a message notifying her to timely file his Notice of Appeal. Ms. Jones further avers that she called Petitioner's attorney, that the secretary connected her to the attorney's voicemail, and that she left her a message requesting that she file a "timely notice of appeal." She also asserts that when she finally spoke with her son's attorney, the attorney advised her that she had filed a "direct appeal," that the appeal was denied on July 9, 2008, and that Petitioner had until July 9, 2009 to file a motion pursuant to 28 U.S.C. § 2255. (Doc. 86 at 8-9).

At the evidentiary hearing, which was conducted on May 26, 2010, attorney Lila Cleveland testified that she has been practicing law for fifteen years and that at the time she represented Jones, 25% of her practice involved criminal-trial work. Cleveland denied that Jones, or anyone on his behalf, instructed her to file an appeal at his sentencing or at anytime thereafter. She also denied that she received a letter from Jones after sentencing requesting her to file an appeal. Cleveland testified that based on her understanding of the law in the Eleventh Circuit, she is obligated to file an appeal if requested, even if she does not believe that there are any

7

meritorious issues. Cleveland explained that in such a situation, she would file the appeal, then file an <u>Anders</u> brief[4] and request permission to withdraw. Cleveland testified that she advised Jones of his appellate rights when she reviewed the plea agreement with him and that she was unaware of any non-frivolous issues for appeal. Cleveland further testified that she has no recollection of any communication with Jones at all following his sentence, and that:

> I feel very confident in my testimony
> that he never mentioned appeals to me,
> either before sentencing or after
> sentencing. He never mentioned a desire
> to appeal because, again understanding the
> case law in this Circuit, and my obligations,
> if he makes that request, I would have
> certainly acted upon it. I -- I'm bound
> to -- is my understanding of the law.

(FTR Digital Audio Recording, May 26, 2010).

Jones testified that while in school, he attended EMR (Educable Mentally Retarded) classes, that he cannot read, and that he writes with difficulty. Jones also testified that he was not able to read the plea agreement and that Cleveland did not explain or counsel him concerning the agreement. He further testified that immediately after the Court imposed his 235 month

---

[4] <u>Anders v. California</u>, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

sentence, he spoke to Cleveland for "five seconds." Jones avers that he informed Cleveland that he wished to appeal his sentence and that in response, Cleveland chastised him to "be quiet." According to Jones, he personally called Cleveland the day following his sentencing hearing and spoke to a person he assumes was her secretary. Jones testified that the person informed him that Cleveland was not available and that since his trial was over, they were no longer required to speak with him. Jones testified that he continued to attempt to place collect calls to Cleveland's office from jail; however, his calls were not accepted. Jones admitted that notwithstanding the assertion contained in his petition, he never wrote Cleveland a letter requesting that she file an appeal on his behalf. According to Jones, his fiancée, Teresa King, is the one who actually wrote the letter to Cleveland regarding his appeal. Jones testified that after his sentencing, he asked his fiancée, Teresa King, and his mother, to assist him in contacting Cleveland regarding his appeal.

Teresa King, Jones' fiancée, testified that she and Jones have been in a relationship since 2001, that the evening following his sentencing hearing, she spoke with Jones, that Jones did not understand his 235 month sentence, so she explained to him what the sentence meant in terms of years.

King further testified that Jones asked her to contact his attorney to "find out what happens next," and that she made no effort to do so. According to King, she did not write or call Cleveland. She instead asked Jones' mother and his sister to contact Cleveland.

Jones' mother, Evelyn Jones, testified that she did not attend Jones' sentencing hearing due to illness. She also testified that Teresa King gave her Cleveland's phone number in order to "see about him going back to court" and to get his "trial reversed." Evelyn Jones further testified that she attempted to contact Cleveland four times by telephone and that although the secretary told her that Cleveland would return her call, Cleveland never returned her calls.

Jones' sister, Gwendolyn Sutton, testified that she did not attend Jones' sentencing hearing and that while Teresa King contacted her the day after the sentencing and requested that she contact Cleveland, she did not attempt to contact Cleveland by phone, letter, or in person. According to Sutton, she was however personally present when her mother left messages with Cleveland's office.

To prevail on a claim that counsel was constitutionally ineffective for failing to file an appeal, a petitioner must show that (1) his attorney's representation fell below "an

objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different, or in other words, that the petitioner was prejudiced from the deficient performance. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see also Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000) (holding that Strickland test applies to claim that attorney was ineffective for failing to file notice of appeal). In order to succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy both prongs of the Strickland test. Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

It is well-settled that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Thus, such an omission, if proven, constitutes constitutionally deficient performance, as a matter of law. Additionally, it is clear that "to satisfy the prejudice prong of the Strickland test, a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir.

11

2005).  Moreover, "when counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit."  Flores-Ortega, 528 U.S. at 477 (internal quotes omitted).  In other words, "[p]rejudice is presumed."  Gomez-Diaz, 433 F.3d at 790.  Accordingly, if the Court determines that Ms. Cleveland failed to honor Jones' request to file a notice of appeal, it must grant Jones' § 2255 motion on that ground.[5]

The same principles apply even when the petitioner, as here, has signed a limited appeal waiver.  See Gomez-Diaz, 433 F.3d at 793-94. Specifically, the Eleventh Circuit has held that the general rule that an attorney who disregards instructions from his client to appeal acts in a manner that is per se professionally unreasonable applies with equal force where a defendant has waived some, but not all, of his appeal rights. Id. at 794.  Cf. United States v. Sandoval-Lopez, 409 F.3d 1193, 1197 (9th Cir. 2005) (noting that, notwithstanding a defendant's guilty plea and waiver of his right to appeal, "If ... it is

_____

[5]  The Eleventh Circuit has explained that if, after an evidentiary hearing, a district court finds that a defendant was denied the right to appeal, the court must vacate the judgment, reimpose the same sentence, and inform the defendant of the right to appeal and that he has ten days in which to file a notice of appeal. United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000).

true that [the defendant] explicitly told his lawyer to appeal his case and his lawyer refused, then we are required by <u>Flores-Ortega</u> to conclude that it was deficient performance not to appeal and that [the defendant] was prejudiced.").

After carefully observing the demeanor and credibility of the witnesses during the evidentiary hearing, and reviewing all other relevant portions of the record, the undersigned credits Cleveland's account over that of Jones and his relatives. Simply put, the undersigned finds that Cleveland's testimony was more credible. Through her testimony, Cleveland demonstrated her familiarity with the procedure that is to be followed whenever a criminal defendant expresses an interest in pursuing an appeal, and her general practice of complying with requests to pursue appeals. Cleveland also testified without hesitation that while her representation of Jones occurred more than two years earlier, she is confident that she would have filed an appeal on his behalf had she been requested to do so.

Jones, on the other hand, admitted that contrary to the assertion contained in his petition, he never wrote Cleveland a letter requesting that she file an appeal on his behalf. Moreover, while Jones testified that it was actually his fiancée, Teresa King, who wrote the letter, at the evidentiary hearing, King denied writing the letter or making any attempt to

contact Cleveland. According to King, the only thing she did was to explain to Jones the number of years yielded by his 235 month sentence, and to pass along to his mother and his sister his request that someone contact Cleveland. Tellingly, King testified that Jones wanted her to contact Cleveland to find out what happens next.

Additionally, while Jones filed a declaration that was purportedly signed by his mother, Evelyn Jones (Doc. 86 at 8-9), the assertions contained in the declaration are in stark contrast to the mother's testimony at the evidentiary hearing. In the declaration, Jones' mother alleges that when she finally spoke to Cleveland, Cleveland advised her that she had filed a direct appeal for Jones and that the appeal had been denied; however, at the evidentiary hearing, Jones' mother testified that despite repeated attempts to reach Cleveland, Cleveland never returned any of her telephone calls. Based on their demeanor and the stark inconsistencies between their written submissions and their testimony at the hearing, the undersigned finds that the testimony of Jones and his relatives was simply not credible. This lack of credibility, coupled with Cleveland's straight forward testimony regarding her obligation to file an appeal upon request, and her general practice of doing so, compels the undersigned to find that Jones did not request

Cleveland to file a notice of appeal. Thus, Jones is not entitled to relief on this basis.

Even if no request to appeal is made, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example) because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480; Dortch v. United States, 2008 U.S. Dist. LEXIS 4407 (S.D. Ala. 2008). An expression that is not sufficient to constitute a request or direction to appeal may nevertheless show that the petitioner reasonably demonstrated to counsel an interest in appealing. Gomez-Diaz, 433 F.3d at 792; Dortch, 2008 U.S. Dist. LEXIS 4407 at 6. In such a situation, the failure to consult constitutes deficient performance, and the petitioner is prejudiced if he shows a reasonable probability that he would have timely appealed but for counsel's failure to consult. Flores-Ortega, 528 U.S. at 484; Dortch, 2008 U.S. Dist. LEXIS 4407 at 6. Based on the testimony and other evidence before the Court, the undersigned finds that Defendant did not express such an interest in appealing to Cleveland, nor was any such interest communicated to Cleveland through Jones' relatives.

Thus, the question becomes whether, under the circumstances, a rational defendant would have wanted to appeal his sentence. In answering this question, it is relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal. Ortero v. United States, 499 F.3d 1267, 1271 (11th Cir. 2007). Whether the defendant received the sentence for which he bargained is also relevant to this inquiry. These factors all weigh against Jones.

Because a guilty plea reduces the scope of potentially appealable issues, and may indicate that the defendant seeks an end to the judicial proceedings, information about whether the defendant entered a guilty plea is "highly relevant." Flores-Ortega, 528 U.S. at 480. An appeal waiver limits the grounds for an appeal, and an appeal on one of the restricted grounds is frivolous and not one that a rational defendant would take. Ortero, 499 F. 3d at 1271. In this case, Jones entered a guilty plea, did not request counsel to file a notice of appeal and has not identified any issues, let alone nonfrivolous issues, which he would have raised on direct appeal; thus, his counsel had no constitutional duty to consult with him concerning an appeal. Accordingly, he is not entitled to relief on his first ground.

**B. Claim Two: Counsel was ineffective for failing to request downward departure due to Jones' diminished capacity.**

A counsel's performance is deficient if, given all the circumstances, his or her performance falls outside of accepted professional conduct. <u>Strickland</u>, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1314-14 (llth Cir. 2000)(citations omitted). Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." <u>Id.</u> at 1315.

Jones' claim that his counsel was ineffective in failing to request a downward departure based on diminished capacity fails. A district court can grant a downward departure based on diminished capacity if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity, and (2) the significantly reduced mental capacity substantially contributed to the commission of the offense. U.S.S.G. 5K2.13. In this case, Jones has not presented any evidence that his mental capacity was significantly reduced or that his mental

capacity contributed to the commission of the offense. Aside from asserting that he was in special education classes, and that his mother informed his counsel that he has a mental problem and receives a check, Jones has failed to present any facts that suggest that he suffered from a significantly reduced mental capacity at the time of the offense. Moreover, Jones' Presentence Investigative Report reflects that he graduated from high school, and while he was evaluated by Mobile Mental Health at age 16, his mother reported that he does not suffer from any mental health problems. Further, during the guilty plea hearing, Jones expressly denied receiving any treatment for mental illness. (Doc. 21 at 16; Doc. 90 at 6). Accordingly, based on the record before the Court, Jones has failed to establish that his counsel was ineffective in failing to seek a downward departure on his mental capacity.

**C. Claims 3 & 4: Counsel was ineffective for misadvising Jones that he was pleading guilty to his individual distribution charges and not to conspiracy, and Jones' guilty plea was not knowingly and voluntarily made.**

"It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508, 114 S. Ct. 2543, 81 L. Ed. 2d 437 (1984). Accordingly, the Court begins its analysis of Jones'

final two claims by first considering the voluntariness and intelligence of his guilty plea. Under the Federal Rules of Criminal Procedure, a plea of guilty will be deemed voluntary, if before a guilty plea has been accepted, the "court address[es] the defendant personally in open court and determine[s] that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed.R.Crim.P. 11(b)(2). In the 11th Circuit, there is "a 'strong presumption' that statements made by the defendant during his plea colloquy are true." United States v. Cardenas, 230 Fed. Appx. 933, 935 (11th Cir. 2007)(citing United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). "[T]herefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.' Id.(quoting United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)).

While Jones asserts that his plea was involuntary or somehow coerced, there is no evidence to support this contention. The record is totally devoid of any evidence that suggests that Jones' plea was involuntary or unlawfully induced. Indeed, the record reflects that the Court conducted a thorough *Rule 11* plea colloquy, wherein Jones was advised of the consequences of his guilty plea, of the nature of the charges,

of the maximum penalty he faced, that his sentence would be determined by the Court and that it could be different from any estimate his attorney might have given him, that the Court would make the ultimate sentencing determination, and that Jones would not be able to withdraw his plea if his sentence was more severe than anticipated. (Doc. 90 at 7-8, 9, 10, 14, 17, 19). Jones stated that he understood each of these conditions and confirmed that no one had forced him to plead guilty, nor had anyone induced him to plead guilty with promises or assurances of any kind but that he was pleading guilty because he was guilty. Jones also acknowledged that he fully discussed his case, including the charges and the plea agreement, with his attorney, that he understood the charges and the plea agreement, and that he was satisfied with the representation and advice given by his counsel. (Id.) Based on this record, it is clear that notwithstanding Jones' assertions to the contrary, his plea was both knowing and voluntary.

Not only does the record demonstrate that Jones' plea was both knowing and voluntary, it also reflects that Jones was expressly advised that he was pleading guilty to count one of the indictment. The hearing transcript reflects that while the Court initially indicated that Jones was pleading guilty to count four of the indictment, which was a possession charge, the

Court later clarified that Jones would be pleading guilty to count one, and detailed the elements necessary to establish the conspiracy charge, and the penalty Jones could face by pleading guilty to count one. (<u>Id.</u> at 10, 19-20). Jones acknowledged that he understood the penalties that could be imposed, that he committed the facts alleged in the factual resume, and that he was pleading guilty of his own free will because he was in fact guilty. (<u>Id.</u>) Based on Jones' testimony at the guilty plea hearing, his contention that his counsel improperly advised him about the count to which he was pleading and that his plea was not knowing and voluntary is without merit. The record clearly establishes that Jones knew the offense to which he was pleading and that he entered said plea of his own violation. Thus, his claims must fail. <u>See</u> <u>Langford v. U.S.</u>, 2009 U.S. Dist. LEXIS 127453, *25 (S.D. Ala. May 11, 2010) ("Mere disappointment that a court imposed a harsher sentence tha[n] what one hoped for is not the proper basis for a motion to vacate.").

**IV.  <u>CERTIFICATE OF APPEALABILITY</u>**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned  recommends that a certificate of appealability in this case be denied.  28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the

21

applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463

U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

None of Jones' claims are such as would warrant the issuance of a Certificate of Appealability. Reasonable jurists could not debate whether Jones' claims alleging ineffective assistance of counsel should be resolved in a different manner or deserves to proceed further. The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability.

## V. __CONCLUSION__

For the foregoing reasons, it is recommended that Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 86) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Josean Tartillas Jones. The undersigned Magistrate Judge is also of the opinion

that Jones is not entitled to issuance of a Certificate of Appealability.  It is so recommended.

The attached sheet contains important information regarding objections to this Report and Recommendation.

Done this **18th** day of **November, 2011.**

_____**/s/ SONJA F. BIVINS**_____
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS**

**AND RESPONSIBILITIES FOLLOWING RECOMMENDATION**
**AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **_Objection_**.  Any party who objects to this recommendation, or anything in it, must, within fourteen days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a _de novo_ determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  _See_ 28 U.S.C. § 636(b)(1)(C); _Lewis v. Smith_, 855 F.2d 736, 738 (11th Cir. 1988); _Nettles v. Wainwright_, 677 F.2d 404 (5th Cir. Unit B, 1982)(_en banc_).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[6] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed _de novo_ and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[6]The Court's Local rules are being amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  ***Transcript (Applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.